**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CASE NO. 21-MJ-539 (RMM)** |
| | : | |
| **THOMAS JOHN BALLARD,** | : | |
| | : | |
| **Defendant.** | : | |

**MOTION FOR REVIEW AND**
**APPEAL OF RELEASE ORDER**

The United States of America, by and through its attorney, the Acting United States Attorney for the District of Columbia, respectfully moves this Court to review the decision by the Magistrate Judge from the Northern District of Texas to deny the government's motion for pre-trial detention. In support thereof, the government states the following:

I.      **BACKGROUND**

A.      **Procedural Posture**

On August 10, 2021, defendant Thomas John Ballard was arrested in the Northern District of Texas on an arrest warrant issued from the United States District Court for the District of Columbia by Magistrate Judge Robin M. Meriweather in connection with a Criminal Complaint charging the defendant with Obstruction of Law Enforcement During Civil Disorder, in violation of 18 U.S.C. § 231(a)(3), Assaulting, Resisting, or Impeding an Officer Using a Dangerous Weapon, in violation of 18 U.S.C. § 111(a)(1) and (b), Knowingly Entering or Remaining in any Restricted Building or Ground Using a Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(1) and (b)(1)(A), Disorderly and Disruptive Conduct in any Restricted Building or Ground Using a Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(2) and (b)(1)(A), Engaging in Physical Violence any Restricted Building or Ground Using a Dangerous Weapon, in violation of 18 U.S.C.

1

§ 1752(a)(4) and (b)(1)(A), and Violent Entry and Disorderly Conduct on Capitol Grounds, in violation of 40 U.S.C. § 5104(e)(2)(D) and (G).

On August 10, 2021, during the defendant's initial appearance in the Northern District of Texas, the government made a motion to detain the defendant without bond pending trial pursuant to 18 U.S.C. §§ 3142. A detention hearing was held on August 13, 2021, during which the presiding magistrate judge denied the government's detention motion and issued an order releasing the defendant with certain conditions. Following this, the government orally moved to stay the defendant's release pending an appeal by the government. The magistrate judge granted that request until the appeal is resolved.

The government hereby appeals that release order. Jurisdiction over this review and appeal lies in this Court, rather than to a judge in the Northern District of Texas, pursuant to 18 U.S.C. § 3145(a)(1) (when defendant is released by person other than judge of court having original jurisdiction over offense, government's appeal lies to court of original jurisdiction).

### B.    Statement of Facts

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3,

2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of

violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

*The Defendant's Conduct at the United States Capitol*

The Government incorporates by reference the statement of facts supporting the complaint in this matter (DE 1). In pertinent part, Defendant was identified after an anonymous tip led the FBI to a website maintained by Defendant. On the website, the FBI found evidence that Defendant had done repair work on motorcycles for an Arlington, Texas police officer. That information led the FBI to two police officers who positively identified the Defendant and provided a telephone number linked to Defendant.

Publicly available video as well as MPD body-worn camera footage shows that Defendant was present at the Capitol on January 6 during the riots. Defendant was wearing a blue hoodie, a tan backpack, and a black and orange "Infowars" baseball cap. In one public photograph, Defendant can be seen wearing a gas mask while among the rioters confronting the police near the west side of the Capitol.



In another, Defendant can be seen holding a police baton while among a group of rioters confronting the Capitol Police at the west side of the Capitol.



Later videos show Defendant in the vicinity of the archway of the lower west terrace of the Capitol Building, where over the course of several hours, rioters attacked members of MPD and USCP who were stationed in the archway, trying to stop rioters from gaining entrance to the Capitol.  In several videos and photos, Defendant can be seen carrying the police baton.



According to these public videos as well as body-worn cameras of MPD Officers stationed in the archway, at approximately 4:47 p.m., Defendant was at the front line of the rioters confronting the officers in the archway.  While there, Defendant threw a tabletop at the officers while other rioters were also attacking.  In the photo below, taken moments before the throw,

Defendant can be seen, circled in red, holding the tabletop over his head, with the police baton in his right hand.



The video also shows that after throwing the tabletop, Defendant threw two other objects (not visible in the video) at the officers.

Public video and body-worn camera footage show that at approximately 4:50 p.m., Defendant used the baton to attack the officers inside the archway.  A screenshot from one of the videos is shown below, with Defendant circled in red, and an arrow pointing at the baton.



Defendant's attack is also visible from the body-worn camera footage, shown below.



The videos show that Defendant initially used the baton to strike with an overhand motion, followed by efforts to attack the legs of the officers, below the area being protected by their riot shields.

Additional videos show Defendant continued to assault the officers inside the archway. Video from approximately 4:51 p.m. shows Defendant pointing what appears to be a strobe light at the officers, with intent of disorienting them and making it more difficult for them to defend the archway from the attacking rioters. In the photo below, Defendant can be seen with the light in his hands.



7

In the screenshot below, Defendant (circled in red) can be seen holding the light in his left hand.



Immediately thereafter, Defendant threw what appears to be a bottle at the officers in the archway.  In the screenshot below, Defendant (circled in red) can be seen throwing the bottle with his right hand.



Thereafter, the video shows Defendant grabbing hold of a rolled up scaffolding netting and shoving it at the feet of the officers.  In the screenshot below, Defendant (circled in red) can be seen pushing the rolled up scaffolding netting towards the officers.

8



At approximately 4:59 p.m., public video shows Defendant breaking a wooden plank into smaller pieces and throwing them at the officers.  In the screenshot below, Defendant can be seen with one of the broken-off pieces in his right hand as he throws it at the officers.



At 5:00 p.m., Defendant threw a white pole at the officers.  Below is a screenshot from Capitol CCTV from inside the archway, with Defendant circled in red, showing Defendant in the

act of throwing the pole at the officers inside the archway.



Defendant was arrested in Fort Worth, Texas on August 10, 2021.  Pursuant to a search warrant, Defendant's residence was searched, and law enforcement found, among other things, the tan backpack, "Infowars" baseball cap, and gas mask seen in the images above.

Defendant agreed to be interviewed at the time of his arrest.  During the interview, Defendant admitted he had been present at the Capitol on January 6.  Defendant admitted he had brought a gas mask with him to the Capitol and identified himself in a photograph showing him holding the baton, but claimed that he "found" it on the ground outside the Capitol.  Defendant claimed he could not recall whether he had attacked any police officers while at the Capitol.

On Defendant's phone, law enforcement found photographs Defendant took at the Capitol, including photographs of USCP signs restricting access to the Capitol grounds, and an image on Defendant's camera roll dated January 7, 2021, with the phrase "The Constitution Actually says you Can legally Overthrow your Government if they Are tyrannical."



## C.    Order for Release

On August 10, 2021, during the defendant's initial appearance in the Northern District of Texas, the government orally moved for the defendant to be detained pending trial pursuant to 18 U.S.C. §§ 3142(e) and (f)(1). The defendant is eligible for detention, pursuant to 18 U.S.C. § 3142(f)(1), because the case involves a crime of violence, namely Defendant's violent assaults on federal officers.

During a detention hearing on August 13, 2021, Magistrate Judge Hal Ray denied the government's detention motion.  The magistrate judge granted a stay of his release order until the appeal is resolved.   The government hereby appeals and seeks review of that release order.

## III.    <u>ARGUMENT</u>

Title 18, U.S.C. § 3145(a) states:

**(a) Review of a release order –** If a person is ordered released by a magistrate, …

> (1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release . . .

The motion shall be determined promptly.

On the government's motion to review a release order, this Court considers *de novo* the Magistrate Judge's denial of pre-trial detention. In its discretion, the Court may proceed to rehear the evidence by recalling the witnesses, reviewing transcripts, or by proceeding through proffer and argument. It may take additional evidence from new witnesses or consider arguments not previously raised. In short, the Court may proceed as best enables it to resolve the question posed: whether any condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. As the legislative history of the 1984 Bail Reform Act amendments shows:

> [T]he language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The committee intends that the concern about safety be given a broader construction than merely danger of harm involving violence. . .

See S.Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3195-3196.[1]

The defendant is subject to detention pursuant to 18 U.S.C. § 3142(f)(1)(A) because the

---

[1] To that end, it is worthwhile recalling Congress' intent in 1984 when it enacted the current version of the Bail Reform Act:

> Many of the changes in the Bail Reform Act reflect the . . . determination that Federal bail laws must . . . give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released. . . . The constraints of the Bail Reform Act fail to grant the Courts the authority to impose conditions of release geared toward assuring community safety, or the authority to deny release to those defendants who pose an especially grave risk to the safety of the community. . . . *This broad base of support for giving judges the authority to weigh risks to community safety in pretrial release decisions is a reflection of the deep public concern, which the Committee shares, about the growing problem of crimes committed by persons on release.*

See S.Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3486-3487. (Emphasis added.)

case involves a crime of violence – Defendant's assault with a dangerous weapon on law enforcement officers – and pursuant to 18 U.S.C. § 3142(f)(1)(E), on the ground that the defendant has been charged with two felonies under 18 U.S.C. § 1752 which were committed using a dangerous weapon.

Defendant's actions in this case – repeatedly assaulting riot-clad police officers as part of a violent mob, in order to prevent Congress from certifying the 2020 election -- demonstrate his lack of regard for laws and authority and demonstrate that he poses a risk of danger to the community.  The fact that Defendant brought a gas mask and likely a police baton to the riots demonstrates a level of planning that goes beyond mere happenstance.  The image on Defendant's cellphone from January 7th purporting to justify the "overthrow" of the government demonstrates Defendant's lack of remorse for the violence he engaged in.  And Defendant's lies to law enforcement during his post-arrest statement, claiming that he "found" a police baton on the ground and that he could not recall whether or not he had assaulted law enforcement during the riots further demonstrate the danger he poses and the likelihood that he will not obey any conditions of release that the Court might set.

Moreover, Defendant has no known ties to the District of Columbia and is self-employed. He now faces a significant term of imprisonment in the face of overwhelming evidence against him.  All of this gives him a compelling incentive to flee.

 Although the defendant's two prior convictions have been discharged, that fact that he has evaded arrest and unlawfully possessed a firearm are further evidence of the danger he poses and his lack of regard for laws and authority. Consequently, the government requests review of the magistrate judge's decision to release the defendant.

To the extent the Court grants this request, the government is and will be prepared to show

13

that the remaining factors under 3142(g) favor detention.

      **WHEREFORE**, the United States respectfully prays this Honorable Court to convene a

hearing to review the decision to release Defendant Thomas John Ballard.


                          Respectfully submitted,

                          CHANNING D. PHILLIPS
                          ACTING UNITED STATES ATTORNEY
                          D.C. Bar No. 415793

By:      */s/ Robert Juman*
                          Robert Juman
                          Assistant United States Attorney
                          Bar No. NJ 033201993
                          United States Attorney's Office, Detailee
                          555 Fourth Street, N.W.
                          Washington, DC 20530
                          Phone: (786) 514-9990
                          E-mail: Robert.juman@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the Government's Motion for Pretrial Detention was served on all counsel of record via the Court's electronic filing service.


                                  */s/ Robert Juman*
                                    ROBERT JUMAN
                                    Assistant United States Attorney


Date:  August 13, 2021